## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| AMANDA BELLAFATTO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE VAIL CORPORATION d/b/a Vail Resorts Management Company, and DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendant. | **Trial by Jury Demanded** |

## CLASS ACTION COMPLAINT

Plaintiff Amanda Bellafatto ("Plaintiff"), brings this action against Defendant The Vail Corporation d/b/a/ Vail Resorts Management Company ("Defendant" or "Vail"), by and through her attorneys, individually and on behalf of all others similarly situated, and alleges as follows based on information and belief except as to allegations specifically pertaining to Plaintiff, which are made upon personal knowledge:

### INTRODUCTION

1. Plaintiff brings this action on behalf of herself and all other similarly situated individuals who purchased season passes or Epic Passes for the 2019-2020 ski season (the "Class"). Class members were unable to use the remaining value in their passes after Alterra closed its ski resorts early due to the COVID-19 pandemic. Defendant has refused to refund Plaintiff and Class members for the unusable portion of the passes.

2. Activities such as skiing, snowboarding, and using lifts to access the ski and snowboard routes, are difficult to safely participate in while social distancing to help avoid

contracting the virus. As such, beginning on March 15, 2020, Defendant suspended operations at all of its resorts in North America, and, within the following five days, closed all of its resorts.

3.  By refusing to refund to customers the monies paid for passes they can no longer use – money that they need to provide for themselves and their families during the crisis – Defendant shifted the financial burden of the crisis onto Plaintiff and the Class who paid hundreds or thousands of dollars for lift tickets and passes to ski or snowboard at Alterra's resorts.

4.  Defendant's conduct breaches its contract with passholders, is unfair, unlawful, and unconscionable, and unjustly enriches it at the expense of its customers. Plaintiff brings this action in order to secure partial refunds for all similarly situated customers that Defendant has wronged by refusing to issue refunds for season passes and Epic Daily Passes with unused days when Vail closed its resorts starting between March 15 and March 20, 2020.

## JURISDICTION & VENUE

5.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.  This Court has personal jurisdiction over Defendant because Defendant is a resident of, and is headquartered in, this judicial district, and has conducted substantial business in this judicial district, and intentionally and purposefully sold its season passes and Epic Passes into the stream of commerce within this judicial district and throughout the United States.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant is a citizen of and headquartered in this district, transacts business in this district, and is subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

8. Plaintiff Amanda Bellafatto ("Plaintiff") is a citizen of the State of Colorado, and at all times relevant to this action has resided in Lakewood, Colorado.

9. On December 2, 2019, Plaintiff purchased a Summit Value College Pass from Defendant, which gave her unlimited access to Defendant's ski area in Keystone, Colorado, and limited restricted access to its ski are in Breckenridge, Colorado for the 2019-20 ski season. Plaintiff paid $489.00 for her 2019-2020 Summit Value College Pass. Plaintiff used the Summit Value College Pass at Defendant's ski areas during part of the 2019-2020 ski season, and planned to use the Summit Value College Pass after March 15, 2020. Due to the suspension and closure of Defendant's ski areas, Plaintiff was not able to use the Summit Value College Pass for the 2019-2020 ski season after March 15, 2020. Defendant did not provide Plaintiff a refund of the unused portion of the Summit Value College Pass after Defendant closed all of its ski areas and rendered the Summit Value College Pass unusable.

10. Had Plaintiff known that the 2019-2020 season was going to end on March 15, 2020, she would either have not purchased the pass, or would not have paid the full purchase price for the pass.

11. Defendant The Vail Corporation d/b/a Vail Resorts Management Company is a Colorado corporation with its principal place of business located at 390 Interlocken Crescent, Broomfield, Colorado 80021.

12. The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

13. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of Vail at all relevant times.

14. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary. Each reference in this Complaint to "Vail" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

15. Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## GENERAL ALLEGATIONS

16. Defendant operates 37 "mountain ski resorts and urban ski areas" (collectively, "ski areas") across the world, the majority of which are located in the United States. In the United States, Defendant owns and operates ski areas in Colorado, Utah, California, Nevada, Vermont, New York, New Hampshire, Washington, Pennsylvania, Ohio, Missouri, Wisconsin, Minnesota, Michigan, and Indiana. Internationally, Defendant owns and operates resorts in Canada, Australia, Japan, Switzerland, Italy, and France.

4

17. Individuals purchase either a lift ticket or an "Epic Pass" to obtain access to the ski areas. Generally, lift tickets may only be used for the ski area associated with the ticket. Lift tickets provide access to the ski area for 1 to 14 days, depending on the number of days purchased.

18. Defendant also sells several other types of "Epic Passes" that provide passholders unlimited access to most of Defendant's ski areas, and limited access to the remainder of Defendant's ski areas. Defendant advertises that Epic Passes provide "Unlimited, Unrestricted Skiing at our Best Resorts," "Unlimited, unrestricted skiing or riding," have "no restricted dates," and that Epic Passes are "without limits."[1]

19. In addition to the Epic Pass, Defendant also sells the Local Epic Pass, which provides passholder "unlimited, unrestricted access" to many of Defendant's ski areas, and limited access—either a limited number of days or holiday-restricted access—to the remainder of Defendant's ski areas.[2]

20. Additionally, Defendant sells regional Epic Passes to specific ski areas, which provide passholders "unlimited, unrestricted access" to the specific ski area(s).[3] Defendant's regional Epic Passes are the: Summit Value Pass, Keystone Plus Pass, Tahoe Local Pass, Tahoe Value Pass, Kirkwood Pass, Northeast Value Pass, Northeast Midweek Pass, Afton Alps Pass, Mt. Brighton Pass, Wilmot Pass, Ohio Pass, Paoli Peaks Pass, Snow Creek Pass, and Hidden Valley Pass.

21. Defendant also sells "specialty" passes for specific groups of people, which include: Military Pass Active, Military Pass Active Dependent, Military Pass Retired, Military

---

[1] *Epic Season Pass*, EPIC PASS, *available at:* https://www.epicpass.com/passes/epic-pass.aspx (last accessed June 2, 2020).
[2] *Epic Local Pass*, EPIC PASS, *available at:* https://www.epicpass.com/passes/epic-local-pass.aspx (last accessed June 2, 2020).
[3] *See e.g.*, *Kirkwood Pass*, EPIC PASS, *available at:* https://www.epicpass.com/Passes/Kirkwood-Pass.aspx (last accessed June 2, 2020).

5

Pass Retired Dependent, Military Pass Veteran, Military Pass Veteran Dependent, Liberty Pass, Liberty Pass Dependent, Local College Pass, Summit Value College Pass, Park City Youth Pass, Tahoe Local College Pass, Tahoe Value College Pass, Kirkwood College Pass, Afton Alps College Pass, Afton Alps College Night Pass, Mt. Brighton College Pass, and Mt. Brighton College Night Pass.

22. Defendant's regional Epic Passes may be limited to specific ski areas, or particular days of the week, but otherwise provide access to ski areas for the entire 2019-2020 season. Similarly, while some of Defendant's specialty passes may be limited to particular ski areas, or certain days of the week, the passes otherwise provide access to the ski areas for the entire 2019-2020 season. Defendant's Epic Pass, Epic Local Pass, regional Epic Passes, and specialty Epic Passes are full season passes (hereinafter, collectively, "Season Epic Passes").

23. Defendant also sells Epic Day Passes which provide passholders with from 1 to 7 days of access to the majority of Defendant's ski areas. Multi-day Epic Day Passes do not need to be used on consecutive days or at the same ski area.[4]

24. Defendant permitted consumers to purchase a 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-20 Epic Daily Pass by making an initial payment for $49.00 and pay the remaining balance for the pass by the purchaser's credit card in September 2019. Defendant's Epic Pass website states that, by making the $49.00 initial payment, the purchaser is "committing to buy the Pass(es)" and that once the purchaser makes the $49 initial payment neither the initial payment nor the pass purchase can be cancelled or refunded.[5]

---

[4] *Epic Day Pass*, EPIC PASS, *available at:* https://www.epicpass.com/passes/epic-day-pass.aspx?days=7 (last accessed June 2, 2020).
[5] *See Deposit and Cancellation Policy*, EPIC PASS, *available at:* https://www.epicpass.com/info/deposit-and-cancellation-policy.aspx (last accessed June 2, 2020).

25. Defendant also offers Pass Insurance for the Epic Passes, which provides for a refund of the cost of the Epic Pass for covered events. The covered events are limited to: injury or sickness of the insured; injury, sickness, or death of a family member of the insured if the insured is subpoenaed, required to serve on a jury, hijacked, or quarantined; if the insured is involuntarily laid off, terminated, or transferred; if the insured is called for active military service or had military leave canceled, if the insured has a pregnancy or childbirth; or if the insured is a student and transfers schools. The Epic Pass website provides that, unless the consumer purchases Pass Insurance, the purchaser "will not be eligible for a refund of any kind" for the season or Epic Pass.[6]

26. Lift tickets and Epic Passes may be purchased either at one of Defendant's resorts or ski areas, or from Defendant's websites, such as www.snow.com and www.epicpass.com. The Terms & Conditions for use of all of Defendant's websites provide that the use of the website is governed by the laws of the State of Colorado, and any legal proceedings against Defendant shall be commenced in state or federal court in Denver, Colorado.

27. The Epic Passes are popular for skiers and snowboarders, as the Passes provide access to the ski areas for most of the year. Halfway through the 2018-2019 ski season, Defendant had sold over 900,000 passes to its ski areas for that season.[7] The ski/snowboard season typically begins in mid to late October, and usually lasts through April, and, for some ski areas, can last until June.

28. COVID-19 spreads through communities without detection. On February 29, 2020 the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks. On March 11, 2020, the World Health

---

[6] *See Epic Season Pass*, *supra*, footnote 1.
[7] *See* Scott Miller, *Vail Resorts has Sold about 925,000 passes of all kinds for 2018-19 Season*, VAIL DAILY NEWS (Dec. 8, 2018), *available at:* https://www.skyhinews.com/news/vail-resorts-has-sold-about-925000-passes-of-all-kinds-for-2018-19-ski-season/.

Organization classified COVID-19 as a worldwide pandemic and, two days later, the President declared a "National Emergency." On March 11, 2020, the WHO reclassified COVID-19 as a worldwide pandemic and, two days later, the President declared a "National Emergency."

29. On March 11, 2020, in response to the COVID-19 pandemic, Jared Polis, Governor of Colorado, issued Executive Order D 2020 003, which declared COVID-19 a disaster emergency. On March 14, 2020, Governor Polis issued Executive Order D 2020 004, which directed all downhill ski resorts in the State of Colorado to suspend operations from March 15-22, 2020. On March 18, 2020, Governor Polis issued Executive Order D 2020 006, which ordered all downhill ski resorts to suspend operations from March 23-April 6, 2020, which was later extended to April 30, 2020. On March 25, 2020, Governor Polis issued Executive Order D 2020 017, which ordered all residents of Colorado to stay at home.

30. As COVID-19 began to spread across the United States, reports linked the spread of the disease to ski resorts around the country, especially the resorts in Colorado.[8]

31. On or about March 15, 2020, Defendant suspended operation at all of its ski areas in North America until March 22, 2020 and stated that it would refund all lift tickets that were valid for March 15-22, 2020. However, Defendant refused to provide refunds of any portion of the money passholders paid to purchase a Season Epic Pass, including the Summit Value College Pass, or Epic Daily Pass.

32. On March 17, 2020, Defendant stated that it would close all of its ski areas in North America beginning March 20, 2020 but refused to provide refunds for any Season Epic Pass, including the Summit Value College Pass, or Epic Daily Pass.

---

[8] *See e.g.*, Vincent Del Giudice, *Colorado Suspects Virus Cluster in Ski-Resort Region*, BLOOMBERG (Mar. 16, 2020), *available at:* https://www.bloomberg.com/news/articles/2020-03-17/colorado-suspects-virus-cluster-in-ski-resort-region-of-state (updated Mar. 17, 2020).

33. On April 27, 2020, Defendant announced for the first time that it would issue credits—varying in amount based on the type of pass and the usage prior to the shutdowns—to impacted 2019-2020 passholders.[9] However, those credits are good only toward the purchase of passes for the 2020-2021 season, and Defendant continues to refuse to offer refunds of any kind.

34. Because Defendant refused to provide refunds for individuals who purchased any Season Epic Pass or Epic Daily Pass with unused days, many consumers made claims on their Pass Insurance, seeking a refund due to the closure of Defendant's ski areas. Passholders' claims under the Pass Insurance have been denied.[10]

35. No season or Epic Pass passholder is bound by Defendant's attempts to limit its own liability for closing its ski areas. Even if Defendant's limitation of liability applied by its terms—which it arguably does not—Defendant cannot disclaim liability for loss or damage by closing its ski areas and preventing consumers from being able to use the Season Epic Passes or Epic Daily Passes with unused days, without any compensation for the unused portion of the passes. Any attempt by Defendant to limit or disclaim liability for preventing passholders from using the Season Epic Passes or Epic Daily Passes with unused days, while retaining the fees that passholders paid to purchase the passes, is unconscionable and unenforceable, and unjustly enriches Defendant.

## CLASS ALLEGATIONS

36. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

---

[9] *Vail Announces 19/20 Pass Holder Credits and 'Epic Coverage' for 20/21 Season*, VAIL RESORTS (Apr. 27, 2020), *available at:* http://news.vailresorts.com/corporate/vailresorts/vail-resorts-announces-1920-pass-holder-credits-and-epic-coverage-for-2021-season.htm.

[10] *See e.g.*, Epic Pass Facebook, FACEBOOK, *available at:* https://www.facebook.com/pg/epicpass/posts/ (Apr. 8, 2020, 8:50 A.M.) (comment from user stating that his claim for a refund under the Pass Insurance was denied); *id.* (Apr. 8, 2020, 6:55 A.M.) (same); Joyce and Doug Paff, *Letter: So Much for Epic Pass Insurance*, Vail Daily (Apr. 17, 2020), *available at:* https://www.vaildaily.com/opinion/letter-so-much-for-epic-pass-insurance.

37. Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3), defined as follows:

> All persons in the United States who purchased a 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass that had unused days after March 15, 2020.

38. Excluded from the Class are: (a) Defendant; (b) Defendant's affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

39. **Numerosity**: As required by Fed. R. Civ. P. 23(a)(1), upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and therefore allege, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on Defendant's records.

40. **Commonality**: As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a. Whether Defendant breached the contract with Plaintiff and Class members;

    b. Whether Defendant was unjustly enriched by its conduct;

    c. Whether Defendant violated the Colorado Consumer Fraud Act;

    d. Whether Defendant unlawfully converted Plaintiff's and Class members' property for its own use; and

    e. Whether Defendant breached the covenant of good faith and fair dealing.

41. **<u>Typicality</u>**: As required by Fed. R. Civ. P. 23(a)(3), Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out Defendant's uniform conduct, statements, and unlawful, unfair, and deceptive acts and practices.

42. **<u>Adequacy</u>**: As required by Fed. R. Civ. P. 23(a)(4), Plaintiff has no interest that conflicts with the interests of the Class and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

43. **<u>Superiority</u>**: As required by Fed. R. Civ. P. 23(a)(4), Plaintiff class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

44. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

45. Plaintiff and the Class entered into a contract with Defendant when purchasing a 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass. The contract was offered by Defendant and was formed at the time Plaintiff and the Class accepted it by purchasing their 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass.

46. Plaintiff and the Class performed their obligations under the contract by providing payment in consideration for the 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass.

47. Defendant breached its contracts with Plaintiff and the Class by retaining the consideration received by Plaintiff and the Class while closing their ski resorts, making the 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass useless and worthless for a substantial portion of the ski season. Defendant's decision to retain the fees paid by Plaintiff and the Class without providing them with what was promised deprived Plaintiff and the Class the benefit of their bargains.

48. Due to the closure of Defendant's ski areas for a substantial portion of the 2019-2020 season, Defendant is unable to perform the remainder of the contract. Defendant's closure of all of its ski areas for the remainder of the 2019-2020 ski season, while a substantial portion of the ski season remained, renders Defendant's representations that it will not provide refunds for Season Epic Passes, Summit Value College Passes, or Epic Daily Passes illusory and void.

49. As a direct and proximate result of Defendant's breach, Plaintiff and the Class have suffered monetary damages. Plaintiff and the Class seek the return of amounts paid to Defendant for their 2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass, as well as attorneys' fees, costs and interest.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
**(Plead in the alternative to the First Claim for Relief for Breach of Contract)**

50. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

51. Plaintiff and the Class conferred a direct benefit on Defendant by purchasing a 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass.

52. Defendant knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiff and the Class.

53. Defendant's retention of these benefits is unjust and inequitable under the circumstances. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to recover the amount each paid to Defendant for their 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass, as well as attorneys' fees, costs and interest.

## THIRD CLAIM FOR RELIEF
### Conversion

54. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

55. Plaintiff and the Class purchased passes that granted them the right to services that were promised in exchange for the purchase price of the passes.

56. Defendant intentionally interfered with Plaintiff's and the Class' rights granted through those passes when Defendant closed all of its facilities and retained the purchase price of the passes.

57. Defendant exercised control over Plaintiff's and Class members' property by closing its ski areas and refusing to issue partial refunds for the unusable portion of the 2019-2020

13

Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass, and the rights granted by those passes.

58. Defendant's closure of its ski areas and refusal to refund the unusable portion of the 2019-2020 Season Epic Passes, 2019-2020 Summit Value College Passes, or 2019-2020 Epic Daily Passes to Plaintiff and Class members is unauthorized.

59. Plaintiff and Class members have, through the filing of this lawsuit or otherwise communicating with Defendant, demanded that Defendant issue refunds for the unusable portion of the 2019-2020 Season Epic Passes, 2019-2020 Summit Value College Passes, or 2019-2020 Epic Daily Passes.

60. Defendant has uniformly and consistently refused to issue refunds for the unusable portion of the 2019-2020 Season Epic Pass, 2019-2020 Summit Value College Pass, or 2019-2020 Epic Daily Pass. Plaintiff and the Class seek a partial return of the price paid to Defendant for their passes.

**FOURTH CLAIM FOR RELIEF**
**Breach of Warranty**

61. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

62. Defendant created an express warranty through its advertising statements that the passes would provide "unlimited, unrestricted access" to its ski areas through the 2019-2020 season, that the Season Epic Passes and Summit Value College Passes provide access for the entire 2019-2020 season, and that Epic Daily Passes provide access to Defendant's ski areas for the amount of days purchased until the end of the 2019-2020 season. Plaintiff and the Class relied on this warranty in deciding to purchase a pass from Defendant. This warranty became part of the basis of the bargain between the parties. Plaintiff and the Class relied on this warranty in deciding to purchase a pass from Defendant.

14

63. Defendant breached this warranty by failing to provide access to its resorts throughout the 2020 ski season and by failing to issue partial refunds to Plaintiff and the Class after shutting down access to its facilities.

64. Plaintiff and the Class would not have purchased the passes, or would have paid substantially less for them, had Defendant disclosed that it would not honor the warranty and not refund any portion of the monies that Plaintiff and the Class paid to purchase a Season Epic Pass or Epic Daily Pass.

65. Plaintiff and the Class performed their obligations under the warranty, including paying in full for their passes.

66. Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach of warranty.

## FIFTH CLAIM FOR RELIEF
### Breach of Implied Covenant Of Good Faith and Fair Dealing

67. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

68. Every contract in Colorado contains an implied covenant of good faith and fair dealing. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

69. Defendant breached the covenant of good faith and fair dealing by failing to refund to Plaintiff and the Class a portion of the purchase price of their Season Epic Passes or Epic Daily Passes after Defendant terminated access to its facilities.

70. Defendant acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### Violations of The Colorado Consumer Protection Act[11]

71.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

72.     Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes "advertis[ing] goods, services, or property with intent not to sell them as advertised." Colo. Rev. Stat. § 6-1-105(1)(g), (i).

73.     Defendant is a "person" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

74.     In the course of Defendant's business, it advertised that the purchasers of its passes would have unlimited access to skiing and snowboarding until the end of the 2019-2020 season, which typically lasts until May or June. Defendant knew, however, that if it closed all of its resorts before the end of 2019-2020 season that it would retain 100% of the revenue generated from sales of the passes.

75.     Defendant's actions as set forth above occurred in the conduct of trade or commerce.

76.     Defendant's actions proximately caused injuries to Plaintiff and the Class members.

77.     Plaintiff and the Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing their passes, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Defendant with respect to their ability to access Defendant's locations without restriction. Had Plaintiff and the other Class members known this, they would not have purchased

---

[11] Plaintiff does not seek certification under Federal Rule of Civil Procedure 23(b)(3) for Defendant's violation of the CCPA.  Instead, Plaintiff seeks certification under Rule 23(b)(2)—seeking declaratory relief—and Rule 23(c)(4)—regarding the issue of whether Defendant's conduct alleged herein violates the CCPA.

their passes and/or paid as much for them. Accordingly, Plaintiff and the other Class members overpaid for their passes and did not receive the benefit of their bargain.

78. Plaintiff and the Class Members injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court:

(a) Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

(b) Appoint Plaintiff as the representative of the Class and her counsel as Class Counsel;

(c) Award actual damages and equitable monetary relief to Plaintiff and the Class and/or order Defendant to return to Plaintiff and the Class the amount each paid to Defendant;

(d) Award pre-judgment and post-judgment interest on such monetary relief;

(e) Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to issue refunds to any member of the Class who requests a refund;

(f) Award reasonable attorneys' fees and costs;

(g) Grant leave to amend the Complaint to conform to the evidence produced at trial; and

(h) Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial by jury as to all claims so triable.

Dated: June 2, 2020                                  Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jordan L. Lurie*
Jordan L. Lurie (Admitted to Colorado Bar)
**POMERANTZ LLP**
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
jllurie@pomlaw.com

Attorneys for the Plaintiff and the Putative Class